Good morning. I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent Rose Brock Davis. I'll try to reserve two minutes of my time for rebuttal. The district court reputedly erred in its restitution order. First, the court erred in imposing $4,000 in restitution for lost income. I believe the government is going to concede that error, even if it doesn't, regardless. That lost income is a consequential damage which is precluded from restitution recovery, as best explained by the Seventh Circuit in the Scott case. Next, with respect to the asbestos testing, twice before the district court, the government told the court and stated that the asbestos testing was not directly related to the methamphetamine. The only expert who testified, Gene Gietzen, who we called, repeatedly testified that the asbestos had nothing to do with the methamphetamine. Moreover — But how much is the asbestos portion of it? Is there any way of telling? Well, there was $120 in replaced ceiling tiles. Otherwise, part of the problem is that the asbestos testing was lumped in with the methamphetamine testing and it wasn't broken down. The Seventh Circuit addressed that problem in the Menza case. The best evidence that the asbestos testing had nothing to do with the methamphetamine is the asbestos testing included the room at issue, room 107, as well as a handful of other rooms throughout the hotel, including a storage area. Why was the asbestos testing done? There was no testimony on that. My guess, Your Honor, is that that was an outstanding issue because they had the ceiling popcorn tile, acoustic tile, and since they were having the methamphetamine testing done, they went ahead and had the asbestos testing done also. But that issue really wasn't explored. It was just lumped in with the methamphetamine testing. Well, what — Go ahead. Part of, I think, what's involved in Judge Canby's question is there's no evidence that there was any extra cost to the asbestos testing except for these tiles. In other words, all the cost that was incurred would have been incurred even if there were no asbestos testing. Two points, Your Honor. First, there were ceiling tiles that had to be replaced. Those cost $120. Except for the ceiling tiles, right. As for the testing itself, the testing went beyond Room 107, so there's certainly extra labor involved to remove the tiles from those other rooms in the storage area. Also, there was, in the WTR report that was submitted to the court and is part of the Excerpt to Record in this case, there was separate chemical analysis specifically for asbestos. So certainly that separate chemical process would increase the cost. And, of course, it's the government's burden of proof, and that's something that I think was lost sight of at the district court level. So should that just be remanded to determine what that actual cost is? Yeah, I think that would be part of the remand would be, yes, for the district court, and actually the parties could probably figure out exactly how much should be excluded with respect to the asbestos removal, testing, and then replacing the ceiling tiles. Well, if we have to remand on that, is there, would the government be allowed to make additional points on why, how the asbestos testing relates to the, you know, the entire procedure? That would go to the scope of the remand. If the court did a general remand, during the law of the circuit, is that every issue is reopened. So it would depend on the scope of the remand from the court. Going to the larger legal issue as to whether or not the heroin, and specifically the owner, Mr. Bissell, was a victim. In order to be a victim under the Restitution Act, he has to be directly harmed in the course of the criminal conduct that was part of the conspiracy as occurring in Missoula on a specific date. Obviously, the court has seen many, hundreds if not thousands of indictments that talk about conspiracies ranging over a span of geography, charting such as language that says, in Missoula and elsewhere, or in Missoula and throughout the District of Montana. Here, all the indictments said was Missoula. Moreover, the court has seen hundreds if not thousands of indictments that allege a span of time, beginning and continuing through, speaking in years, speaking in months. Here, the indictment alleged a very specific date. And for that reason alone, what happened in Kalispell, a day separate from the day alleged in the indictment in Kalispell's roughly 120 miles from Missoula, is not part of the conspiracy. Moreover... Why can't it be considered part of the relevant conduct? Well, relevant conduct is for guideline purposes, Your Honor, and I don't think that informs restitution analysis. Restitution is a question of statute, so you have to look at the language of the statute. And the way you read the statute, it excludes relevant conduct? Yes, because the statute was incredibly specific. It alleged that the conspiracy occurred in Missoula on October 18, 2005. By the way, which statute do you think applies here? It's 18 U.S.C. 3663, large aid that the district court relied upon to impose restitution. Also, at the district court level, the government maintained, and the district court, although it somewhat contradicted itself, both of those entities said that it didn't matter if there was a meth lab or not in this hotel room. Well, the problem with that is, in order to be a victim, it has to be Miss Brock Davis's criminal conduct that harmed the hotel room. And if there wasn't a criminal conduct and if there wasn't a meth lab, there was no criminal conduct. There was no testimony in court that there was criminal conduct in that hotel room, and we called an expert who basically said you couldn't say one way or the other that there was a meth lab. You couldn't say one way or the other how the methamphetamine contaminated the hotel room. And so we believe there was simply a failure of proof by the government, but moreover, because the government backed away from proving that there was a meth lab, there was manufacturing activity in the hotel room, that the government failed to prove that there was criminal conduct that was part of the conspiracy that directly harmed the hotel room. Even if the court finds that 3663, large A, subsection A2 applies, the Department of Environmental Quality's unreasonable, ridiculous, incredibly poor judgment is what caused the harm here. As the government put it, that was the injury. It was the Department of DEQ that caused this $7,000 in remediation, which was completely unnecessary. Except for it's not that the owner of the hotel, I mean, it's not like he wanted to have to pay for this. I think he would have been more than happy to do it for less, but by law, whether we want to call the law ridiculous or not or if we want to call the Department ridiculous or not, that was the only way he could resume use of his property and be in compliance with the law. What's a man, what's a victim to do? I'll agree he was put between a rock and a hard place. I said that in the district court, but it's the DEQ that put him there. DEQ standards now require that a meth lab contaminate the room. But he paid the money. Correct. He paid the money. So is then because he is, I mean, he's totally innocent here, so then your position would say that he's got to get that back from the DEQ because it's ridiculous as opposed to the person that started the whole thing, which is presumptively in this situation is your client. Correct. He would have to recover from the DEQ or from his insurer. I think we have that argument well in mind. Do you want to reserve the balance for rebuttal? Thank you. Thank you. Good morning. My name is Mike Lahr. I'm an assistant U.S. attorney in the Helena office. Good morning. Good morning. Maybe before you take off, you can, did appellant's counsel correctly state that you're conceding the, I think it's the $4,000 issue? Yes, that would be correct, Your Honor. That issue actually has been conceded for some time. That was my understanding. All right. There's never been a dispute about that based on actually the co-defendants at the time of the co-defendant sentencing some time ago, and if that was not made expressly clear in the brief. No, that's the way I understood it, but I think he wanted to cover those bases and we'll do that for the record. In your brief, you state that the asbestos testing was directly related to the overall methamphetamine testing and cleanup. Was this argument made to the district court? If not, are you foreclosed from making that now? I think it's a matter of the record, Your Honor. I think if one looks at the excerpts of record on pages 96 and 97, is where this issue was touched upon. The court then followed up a little bit. The understanding from the owner, and I think it's clear in the record or fairly clear, although in hindsight, certainly a person would have brought it out more fully had it known this was going to be an issue. But his point was that if ceiling tiles or something containing asbestos also had methamphetamine and therefore had to be removed as contaminated, it would have required special contractors to remove it to dispose of it. Therefore, they had to do both. They were not only checking for methamphetamine, but in the case of the ceiling tiles, they also had to check to see if it would require special disposal. Did they also check for that outside of the room? In that aspect of it, Your Honor, looking at the schedule, this was not fleshed out completely on the record. Whether that is part of getting some type of average or something with the ceiling tiles, that aspect of it was not explained. And that is in the schedule, Your Honor. It looked like there were three, possibly four other rooms, some adjoining, some even looked like on another floor that they did check for asbestos. And why should this defendant pay for that? If that cost could — if it is not part of an overall asbestos cost, in other words, to determine what the ceiling tiles in Room 107, whether or not they were contaminated with asbestos as well as methamphetamine, I think the United States would probably concede that, that if it was completely unrelated to the removal of methamphetamine-contaminated products, if it was purely just an asbestos check, I don't think it would have anything to do with the methamphetamine. But the understanding from the record on page 96 and 97 is they were joint. No one was saying that asbestos causes methamphetamine or the reverse. It was in the decontamination aspect, the disposal aspect, that they had to learn about whether or not asbestos was present. Your Honors, the defendant has talked about her conduct. Certainly there is a statutory framework here as discussed, 3663 large A, the Mandatory Victim Restitution Act, clearly provides the structure for this. It provides for any victim who is harmed. In this case, you definitely had the harm, the conspiracy to manufacture his conduct that extended up to Kalispell. I do not believe, based on the record, that the... So your position is that this, whatever happened in this motel room in Kalispell was part of the conspiracy, although the conspiracy only charged, or the indictment only charged the conspiracy in Missoula on a given day. The way defense counsel is absolutely correct as to the charging document, I think what is important is that the statute was broadened. I think the defendant here is essentially trying to revive the Hughey case, the 1990 Supreme Court case, which did limit restitution to offense conduct, charged offense conduct, charged and convicted offense conduct. The Congress, in response to the Hughey case, specifically and expressly expanded the scope of it to any person harmed, any victim harmed from any conduct arising out of the scheme or conspiracy or pattern, and specifically that has been... Well, it says, Sub A2 says, Approximately harmed as a result of the commission of an offense. Right? And then it says, including when an offense has as an element a conspiracy pattern or scheme. Conspiracy pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme. Right. So that's the broadening language? That's the broadening language. That's precisely correct, Your Honor. And because of the close proximity in time and in location, as he referred to, it's only 120 miles apart. There is no dispute that they had been in that room. That is not disputed. They had only been there a short time previous to their arrival in Missoula. They did have the precursors and the methamphetamine in the trunk of their car. I think most importantly, co-defendant, upon their arrest in Missoula, started this whole thing by alerting the local police in Missoula by telling them you had better check room 107 at the Arrow and in Kalispell. The co-defendant must have thought it was the same course of conduct. Presumably so. Presumably so. So based on that, I think the Court was not clearly erroneous in determining if this is part of the same scheme pattern. It is so close in time. So close in space and in conduct that there certainly was the evidence left, the activity undertaken up there, that that is what triggered this. I'm sorry. If the $4,000 is out and if we were not to feel that you sustained your burden regarding the asbestos, how much more money is out? How do we ascertain that? I think defense counsel is correct as far as if you subtracted the $4,000 from I believe it is some $13,200 and some dollars, the $4,000 would come off of that directly and then you would be looking at the $120 of ceiling tiles that arguably should not have been included if in fact it was purely an asbestos test and had nothing to do with the methamphetamine disposal. Beyond that, that would be the reduction, basically, is the $120 because we have conceded the $4,000 loss revenue based on what the owner subsequently stated. All right. Well, you may have to have a little more evidence on what part of the labor was devoted to testing for asbestos in other rooms and things like that. Based on the limited information which is in the schedule, that is potentially accurate, Your Honor, is because I think again defense counsel is correct. It is not precisely clear how much went to the asbestos testing versus the methamphetamine. Again, based on what the owner stated, it appears that all of the asbestos testing was arguably part and parcel of the overall testing for the disposal issues. No, but the part and parcel, though, it could have been the result of, you know, some bureaucratic thinking by the DEQ that, well, we're going to have to test this for meth and look at those cells. They probably have asbestos. We're going to test that at the same time, right? Because it's been that kind of thought. Your Honor, there's nothing in the record that would indicate that, but not knowing what the DEQ, whether or not they view any hazardous waste site as an excuse to further check for the ongoing asbestos concern. There's no evidence of that, but I could not state one way or another whether or not that was part of the policy. The little evidence in the record seems to indicate that, first of all, this was fairly early in the stages of this Department's, you know, coming up with regulations, trying to determine how these things should be handled, right? So it was sort of still in the, you know, in the hit-or-miss stage of developing their regulations and testing procedures. So it's hard to tell what they were thinking. That is correct, Your Honor. Unfortunately, they had yet to promulgate rules. This was one of their initial times out of the chute. That is correct, Your Honor. Again, based on the evidence in the record, we believe the district court did not abuse its discretion in applying the statutory framework to the facts of this case and that its decisions were based on solid facts underlying. And based on that, we would urge this Court to uphold the district court's determination regarding restitution in this matter. Thank you for your argument. Starting with that last point, this isn't an abuse of discretion review. This is Dano review of whether or not the district court properly applied 3663A in terms of the victim question. And the government made the point, and I would agree that following Huey, Congress broadened the statute. But here, the indictment had very specific and narrow language, and the government is trying to run away from that now, but it's got to live with its charging document. Moreover, in terms of the criminal conduct extending to Kalispell, the government simply failed to prove that. It basically backed away from its burden to show that there was a meth lab or that the conspiracy to manufacture meth extended to that Kalispell hotel room, so there's simply a failure of proof on whether the criminal conduct extended to Kalispell. Judge Tashima, you mentioned that the co-defendant presumably or the co-defendant thought that the conspiracy extended to Kalispell, and the government said presumably so. And that's what's going on here. The government's just relying on a presumption that the criminal conduct extended to Kalispell because it can't – it can't offer the narrow conspiracy language that included in the indictment. And for that reason, we'd ask, not only should the Court reverse the $4,000, reverse on the asbestos issue, but should reverse on the entire remediation cost for the hotel room in Kalispell. What does the – excuse me, but what does the PSR say about Kalispell? PSR basically just – Do you remember? I don't remember specifically. It just has the factual language. I think the more decisive facts were adjudicated through the testimony of Mr. Gietzen, our methamphetamine expert, and then Mr. Bissell, the hotel owner. And we contested the PSR with respect to restitution also. All right. Thank you. Thank you for your argument. This matter will stand submitted.
judges: Canby, Tashima, Callahan